FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 18, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRISTOPHER B.,<br>　　　　　　Plaintiff,<br><br>　vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>　　　　　　Defendant. | No. 4:18-cv-05029-MKD<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 13, 14 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 13, 14. The parties consented to proceed before a magistrate judge. ECF No. 4. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's Motion, ECF No. 13, and grants Defendant's Motion, ECF No. 14.

ORDER - 1

# JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in

ORDER - 3

"substantial gainful activity," the Commissioner must find that the claimant is not

disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two. At this step, the Commissioner considers the severity of the

claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers

from "any impairment or combination of impairments which significantly limits

[his or her] physical or mental ability to do basic work activities," the analysis

proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment

does not satisfy this severity threshold, however, the Commissioner must find that

the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity. 20 C.F.R. §

404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and

award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity." Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On January 18, 2016, Plaintiff filed an application for Title II disability insurance benefits, alleging an onset date of October 5, 2011. Tr. 261-67. The application was denied initially, Tr. 123-29, and on reconsideration, Tr. 131-36. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on June 8, 2017. Tr. 36-76. On July 17, 2017, the ALJ denied Plaintiff's claim. Tr. 12-35.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from October 5, 2011, the alleged onset date, through June 30, 2017, the date last insured. Tr. 17. At step two, the ALJ found Plaintiff had the following severe impairments: major depressive disorder, PTSD, seizure disorder, cannabis use disorder, and chronic lumbar strain. *Id.* At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 21. The ALJ then concluded Plaintiff had the RFC to perform light work with the following limitations:

> [Plaintiff] cannot climb ladders, ropes, or scaffolds, and can only occasionally perform all other postural activities; he can have no concentrated exposure to extreme cold/heat, or vibration; he can have no exposure to hazards such as unprotected heights and moving mechanical parts; he cannot operate a motor vehicle; and he needs a routine, predictable

work environment with no more than occasional changes and no multi-tasking.

Tr. 22-23.

At step four, the ALJ found Plaintiff had no past relevant work. Tr. 28. At step five, the found that, considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as office cleaner I, small parts assembler, or electrical assembler. *Id.* The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from October 5, 2011, through June 30, 2017, the date last insured. Tr. 29.

On December 21, 2017, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability income benefits under Title II of the Social Security Act. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed Plaintiff's symptom claims;

2. Whether the ALJ properly weighed the medical opinion evidence;

3. Whether the ALJ properly considered Plaintiff's VA disability rating;

ORDER - 7

4. Whether the ALJ properly identified Plaintiff's severe impairments at step two;

5. Whether the ALJ properly concluded Plaintiff did not have an impairment that meets or medically equals the severity of a listed impairment at step three; and

6. Whether the ALJ properly found at step five that Plaintiff was capable of performing other work in the national economy.

ECF No. 13 at 6.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his subjective symptom claims. ECF No. 13 at 16-19. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom []he has alleged; []he

need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529 (2011). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence. Tr. 24.

### 1. Lack of Supporting Medical Evidence

The ALJ found Plaintiff's symptom testimony was not supported by the medical evidence. Tr. 24-25. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). However, the medical evidence is a relevant factor in

determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2) (2011).

Here, the ALJ first noted that Plaintiff alleged he experienced back pain that prohibited him from working by limiting his ability to carry, stand, sit, move, and bend. Tr. 24; *see* Tr. 316. However, the ALJ found that objective imaging and physical examinations of Plaintiff's back failed to support the severity of the alleged limitations. Tr. 24; *see* Tr. 513 (November 27, 2013: x-ray showed straightening of lordosis and mild disc space narrowing at L5-S1); Tr. 872 (October 7, 2015: normal gait, no abnormal movement noticed); Tr. 448 (January 13, 2016: normal physical examination of back); Tr. 454 (January 18, 2016: same); Tr. 469 (January 21, 2016: back movement without difficulty); Tr. 785 (April 13, 2016: "essentially normal" lumbosacral spine imaging series); Tr. 882 (October 14, 2016: full motor strength, normal gait, negative Romberg test); Tr. 993 (October 20, 2016: full range of motion, mild tenderness, and no spasm bilaterally); Tr. 1056 (November 27, 2016: normal range of motion in back). The ALJ further found that where Plaintiff's examinations did yield abnormal findings, they were mild. Tr. 24; *see* Tr. 445 (November 30, 2013: point tenderness of left SI joint, full flexion and extension at waist but with pain); Tr. 474-75 (February 17, 2016: vague lumbar spine tenderness but no step offs, deformities, or redness and no back pain red flags); Tr. 789 (April 12, 2016: neck range of motion within normal limits but

decreased range of motion in back); Tr. 1056 (November 27, 2016: vertebral spasms and tenderness to palpation in lower cervical and upper thoracic area, mildly limited range of motion of neck due to pain).

Second, the ALJ found Plaintiff's alleged impairments from seizure disorder were not supported by the medical evidence. Tr. 24. Plaintiff alleged he experienced disabling limitations from seizure fits. Tr. 58, 365, 374-76. However, the ALJ found that the objective evidence failed to corroborate the presence of disabling seizures. Tr. 24; *see* Tr. 428 (December 14, 2013: unremarkable brain MRI); Tr. 448 (January 13, 2016: head CT showed no acute findings); Tr. 455 (January 18, 2016: MRI showed mastoid effusion but otherwise normal findings); Tr. 970-71 (June 15, 2016: EEG normal).

Third, the ALJ found Plaintiff's alleged severe PTSD and depression were not supported by the medical evidence. Plaintiff alleged significant limitations in mood and interactions with others. Tr. 65-71, 365. However, the ALJ found Plaintiff's allegations were not supported by the longitudinal record of Plaintiff's mental status examinations. Tr. 24; *see* Tr. 486 (October 7, 2015: normal mental status exam with fair insight/judgment); Tr. 870-71 (October 9, 2015: normal mental status exam); Tr. 882 (February 23, 2016: normal mental status exam); Tr. 1033 (March 30, 2016: normal mental status examination with fair

insight/judgment and affect stoic but appearing calm and euthymic); Tr. 831 (June 6, 2016: PHQ-2 screen negative for depression).

Based on this record, the ALJ reasonably concluded that Plaintiff's subjective symptom testimony was not supported by the objective medical evidence. Tr. 24-25. Plaintiff challenges the ALJ's conclusion by offering evidence that Plaintiff argues supports his symptom claims. ECF No. 13 at 3-6, 17-18; *see, e.g.,* Tr. 768 (lumbar spine x-ray abnormal due to muscle spasm and mild arthritis); Tr. 1054 (Plaintiff reported shooting pain in upper back); Tr. 448 (Plaintiff reported headache, dizziness, blurred vision, photophobia, and tunnel vision); Tr. 541 (Plaintiff reported pain and pressure around the skull and blurry vision); Tr. 494 (Plaintiff reported feelings of panic, hypervigilance, and hopelessness); Tr. 705-06 (Plaintiff reported hallucinations, passing suicidal thoughts, flashbacks, and depressed mood). Where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld. *Burch*, 400 F.3d at 679. The Court will only disturb the ALJ's findings if they are not supported by substantial evidence. *Hill*, 698 F.3d at 1158. Here, the ALJ's conclusion remains supported by substantial evidence despite the additional evidence identified by Plaintiff. Because the ALJ's finding is based on a rational interpretation of the evidence, the Court defers to the ALJ's interpretation.

ORDER - 13

### 2. *Lack of Supporting Symptom Reports and Inconsistent Statements to Medical Providers*

The ALJ found Plaintiff's symptom testimony was inconsistent with Plaintiff's failure to report similar symptoms to his treatment providers. Tr. 25-26. In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability review process with any other existing statements or conduct made under other circumstances. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Thomas*, 278 F.3d at 958-59. Additionally, "[t]he failure to report symptoms to treatment providers is a legitimate consideration in determining the credibility of those complaints." *Lesher v. Comm'r of Soc. Sec.*, No. 2:15-cv-00237-SMJ, 2018 WL 314819, at *4 (E.D. Wash. Jan. 5, 2018) (citing *Greger v. Barnhart*, 464 F.3d 972, 972 (9th Cir. 2006)).

Here, the ALJ noted that despite Plaintiff's allegations in his benefits application of disabling seizure fits two to four times per month and up to two times per week, Plaintiff did not report frequent seizures to his treating providers. Tr. 24; *compare* Tr. 58, 374 *with* Tr. 721 (June 13, 2014: Plaintiff reported his last seizure was May 17, 2014); Tr. 889 (August 14, 2014: Plaintiff reported no seizures since taking Gabapentin regularly); Tr. 660 (April 2, 2015: Plaintiff reported his last seizure was December 6, 2014); Tr. 555 (May 13, 2015: Plaintiff

ORDER - 14

again reported his last seizure was December 2014); Tr. 911 (January 13, 2016:

Plaintiff reported his last seizure was early December 2015); Tr. 881 (February 23,

2016: Plaintiff reported his seizure frequency had decreased from a few times a

month to one every few months). The ALJ also observed that despite Plaintiff's

allegations that he experienced two to five headaches per week beginning in

January 2016 and that his severe headaches continued through the date of the

hearing in June 2017, Plaintiff's treatment notes reflected Plaintiff did not

complain of ongoing headaches after February 2016. Tr. 25; *compare* Tr. 58-59,

393-94 *with* Tr. 827 (June 3, 2016: Plaintiff reported no hospitalization for

headaches since February 2016 and that medication was effective in managing his

migraines); Tr. 993 (October 20, 2016: Plaintiff denied headache or dizziness).

Moreover, the ALJ noted that despite alleging back pain that limited his ability to

carry weight, stand, and sit, Plaintiff denied back pain to treating providers on

several occasions. Tr. 25; *compare* Tr. 316 *with* Tr. 448 (January 13, 2016:

Plaintiff denied back pain); Tr. 463 (January 20, 2016: Plaintiff denied back pain);

Tr. 1061 (March 18, 2017: Plaintiff denied joint or muscle pain). Finally, the ALJ

found that Plaintiff did not report any significant cognitive or memory problems to

his providers, other than during the consultative examination. Tr. 26; *see* Tr. 495.

The ALJ reasonably concluded, based on this record, that Plaintiff's symptom

allegations in connection with his claim were inconsistent with his reporting to his

treating providers. This was a clear and convincing reason, supported by substantial evidence, to discount his symptom complaints.

### 3. Positive Response to Treatment

The ALJ found Plaintiff's symptom testimony was inconsistent with evidence documenting a positive response to treatment. Tr. 25. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3) (2011); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). Here, the ALJ found that Plaintiff's mental impairments were "well controlled" with treatment. Tr. 25; *see* Tr. 485 (October 7, 2015: Plaintiff reported compliance with medications and that his PTSD symptoms improved, his mood problems resolved, and that he was sleeping better); Tr. 484 (February 3, 2016: Plaintiff reported full compliance with mental health medications and denied any significant PTSD or mood symptoms); Tr. 1031 (March 30, 2017: Plaintiff reported his mood and irritability improved with Sertraline). The ALJ reasonably concluded that Plaintiff's symptom testimony was inconsistent with his record of improvement with treatment. This was a clear and convincing, and unchallenged, reason, supported by substantial evidence, to discount his symptom complaints.

ORDER - 16

*4. Daily Activities*

The ALJ found Plaintiff's symptom testimony was inconsistent with Plaintiff's daily activities. Tr. 25-26. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

Here, the ALJ found Plaintiff's daily activities were inconsistent with the level of impairment he alleged. Tr. 25-26. Plaintiff alleged that that his impairments caused him to be unable to sit, stand, or walk for more than 15-20 minutes at a time, that he could pay attention for 5-10 minutes at a time, that he would forget tasks, and that he did not get along with others. Tr. 321-23. Plaintiff further testified at the hearing that his headaches caused him to need to lie down in the dark several times per week. Tr. 61-62. Despite these alleged limitations, the

ALJ noted Plaintiff was able to complete daily activities including childcare, some cooking, housework, managing his own finances, and reading daily.  Tr. 25; *see* Tr. 320, 366-68, 495.

The ALJ also considered Plaintiff's activity coaching youth football and serving on the board of a youth sports nonprofit.  Tr. 25-26.  Plaintiff testified at the hearing that his coaching activity was minimal, involving only one team and coaching for only two to three hours per week, that he limited his interaction with others when coaching, and that Plaintiff did not actually do work for the nonprofit and was listed as a board member for "paper reasons."  Tr. 54-57.  However, the ALJ found that Plaintiff's characterization of his involvement was inconsistent with the documentation of these activities in the record.  Tr. 25-26; *see* Tr. 485 (October 7, 2015: Plaintiff reported enjoying coaching youth football); Tr. 495 (March 8, 2016: Plaintiff reported spending "considerable time" attending kids' football games, reported he was the head coach of a youth football team, and described his nonprofit work as involving attending board meetings, talking to businesses and high schools, and handling complaints); Tr. 844 (March 14, 2016: Plaintiff reported enjoying coaching eight different youth football teams, hosting kids at his home for games, and being invited to coach at camps in Denver and Seattle); Tr. 999 (October 18, 2016: Plaintiff reported being invited to coach at other youth football camps and declining because of travel expenses, reported

staying busy on a daily basis with coaching and nonprofit work, and reported

receiving awards for his coaching).  The ALJ reasonably concluded that Plaintiff's

daily activities were inconsistent with the level of impairment he alleged.  This was

another clear and convincing reason, supported by substantial evidence, to discount

his symptom complaints.

The ALJ did not err in discounting Plaintiff's symptom complaints.

**B. Medical Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of the medical opinions of Lynn

Orr, Ph.D., Donna Veraldi, Ph.D., and Robert Smiley, M.D.  ECF No. 13 at 11-14.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."

*Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

Generally, a treating physician's opinion carries more weight than an examining

physician's, and an examining physician's opinion carries more weight than a

reviewing physician's.  *Id.* at 1202.  "In addition, the regulations give more weight

to opinions that are explained than to those that are not, and to the opinions of

specialists concerning matters relating to their specialty over that of

nonspecialists."  *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830-831).

*1. Dr. Orr*

Dr. Orr examined Plaintiff on March 8, 2016, diagnosed Plaintiff with major depressive disorder and posttraumatic stress disorder; measured Plaintiff's visual working memory in the sixth percentile and all other memory measures in the first percentile or lower; and opined Plaintiff's symptoms would interfere with his ability to be consistent in his ability to carry out tasks; that Plaintiff had significantly impaired memory that would be a significantly limiting factor in his ability to be consistent in carrying out tasks; that Plaintiff had reasonably good remote memory, good fund of knowledge, good concentration, fair abstract

thinking ability, and fair insight and judgment; that Plaintiff had no limitations in comprehension or understanding; and that Plaintiff demonstrated adequate social skills. Tr. 492-97. The ALJ gave this opinion little weight. Tr. 27. Because Dr. Orr's opinion was contradicted by Dr. Veraldi, Tr. 44-45, 47-48, the ALJ was required to provide specific and legitimate reason to reject Dr. Orr's opinion. *Bayliss*, 427 F.3d at 1216.

The ALJ found Dr. Orr's opinion was inconsistent with the longitudinal evidence, including Dr. Veraldi's hearing testimony. Tr. 27. An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Additionally, an ALJ may credit the opinion of nonexamining expert who testifies at the hearing and is subject to cross-examination. *See Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995) (citing *Torres v. Sec'y of H.H.S.,* 870 F.2d 742, 744 (1st Cir. 1989)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1041. Other cases have upheld the rejection of an examining or treating physician based in part on the testimony of a non-examining medical advisor when other reasons to reject the opinions of examining and treating physicians exist independent of the non-examining doctor's opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751-

55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from

examining physicians and testimony from claimant that conflicted with treating

physician's opinion)); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995)

(rejection of examining psychologist's functional assessment which conflicted with

his own written report and test results). Thus, case law requires not only an

opinion from the consulting physician but also substantial evidence (more than a

mere scintilla but less than a preponderance), independent of that opinion which

supports the rejection of contrary conclusions by examining or treating physicians.

*Andrews*, 53 F.3d at 1039.

Here, the ALJ found Dr. Orr's opinion was based on memory scores that

were inconsistent with the longitudinal record of Plaintiff's mental status

examinations and his overall level of functioning. Tr. 27; *see* Tr. 486 (October 7,

2015: normal mental status exam including cognition grossly intact); Tr. 870-71

(October 9, 2015: normal mental status exam including concentration and memory

within normal limits); Tr. 882 (February 23, 2016: normal mental status exam

including normal concentration/attention span, ability to perform three step

command, and adequate recent and remote recall); Tr. 1033 (March 30, 2016:

normal mental status examination including cognition grossly intact). Incongruity

between a doctor's medical opinion and treatment records or notes is a specific and

legitimate reason to discount a doctor's opinion. *Tommasetti*, 533 F.3d at 1041.

ORDER - 22

Instead, the ALJ reasonably relied on the opinion of Dr. Veraldi, who testified at the hearing and was available[1] for cross-examination.  Tr. 27; *see* Tr. 44-49.   Dr. Veraldi testified that Dr. Orr's memory scores indicated a level of functioning so low that Plaintiff would not be able to coach football or interact with others in "any functional manner."  Tr. 44.  The ALJ reasonably relied on Dr. Veraldi's opinion over that of Dr. Orr in light of the substantial evidence of Plaintiff's mental status examinations and daily activities in conflict with Dr. Orr's findings.  The ALJ provided specific and legitimate reason, supported by substantial evidence, to discredit Dr. Orr's opinion.

### 2.  Dr. Veraldi

Dr. Veraldi reviewed the record and testified at the hearing that Plaintiff's memory scores as measured by Dr. Orr seemed to under-represent his ability; that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment; that Plaintiff had mild limitations in understanding, remembering, or applying information; that Plaintiff had mild limitation in his ability to interact with others; that Plaintiff had moderate impairments in concentration, persistence, and pace; that Plaintiff had mild limitations in his ability to adapt or manage himself; that Plaintiff was not limited to simple, routine, repetitive tasks; and that

---

[1] Plaintiff declined the opportunity to cross examine Dr. Veraldi.  Tr. 48.

Plaintiff did not have any social limitations.  Tr. 44-49.  The ALJ gave Dr. Veraldi's opinion great weight.  Tr. 26.

Plaintiff asserts the ALJ should have incorporated a limitation to simple, repetitive work into the RFC based on Dr. Veraldi's testimony.  ECF No. 13 at 14.  "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."  *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).  Plaintiff's argument misconstrues Dr. Veraldi's testimony.  Dr. Veraldi testified that Plaintiff could do "at least simple, repeat, repetitive work," and later testified that "I don't think he's limited to simple, routine, repetitive."  Tr. 46-47.  Accordingly, the ALJ did not err in crediting Dr. Veraldi's opinion while failing to incorporate a limitation to simple, repetitive work into the RFC.

### 3. Dr. Smiley

Dr. Smiley reviewed the record and opined Plaintiff was capable of standing or walking six hours out of the day; capable of sitting eight hours out of the day; could not climb ladders or scaffolds; had no manipulative limitations; had no problems with foot control; and should not be exposed to unprotected heights or dangerous, moving machinery.  Tr. 40-44.  The ALJ gave Dr. Smiley's opinion great weight.  Tr. 26-27.

Plaintiff asserts the ALJ should have incorporated limitations from Plaintiff's headaches into the RFC based on Dr. Smiley's testimony.  ECF No. 13

at 14. "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds*, 807 F.3d at 1006. However, an ALJ does not need to incorporate into the RFC an opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Plaintiff identifies Dr. Smiley's statement that "if somebody is having incapacitating headaches therefore interferes with his ability to work" as evidence that the ALJ should have incorporated limitations for headaches in the RFC. ECF No. 13 at 14; *see* Tr. 43. Contrary to Plaintiff's assertion, Dr. Smiley's testimony did not address Plaintiff's specific functioning. The statement Plaintiff identifies is a conditional statement Dr. Smiley made while explaining a hypothetical situation. Tr. 43. Dr. Smiley then clarified that the evidence of headaches in this record was subjective and "it all depends on whether or not the Judge believe[s] that the record [] for the client's testimony is believable." *Id.* Here, the ALJ found Plaintiff's symptom testimony regarding the severity of his headaches was not corroborated by objective evidence and concluded it was not a severe impairment. Tr. 20. Additionally, Dr. Smiley's statement does not specify what type of limitations would be caused by incapacitating headaches. *Id.* Because Dr. Smiley did not render an opinion as to any actual functional limitation Plaintiff experienced due to headaches, the ALJ was not required to incorporate such a limitation into the RFC.

*See* 20 C.F.R. § 404.1545(a)(4) ("When we assess your residual functional capacity, we will consider *your* ability to meet the physical, mental, sensory, and other requirements of work") (emphasis added). Accordingly, the ALJ did not err in crediting Dr. Smiley's opinion while failing to incorporate a limitation specific to headaches into the RFC.

### C. VA Disability Determination

Plaintiff challenges the ALJ's determination that Plaintiff's 100% disability rating from the Department of Veterans' Affairs was entitled to little weight. ECF No. 13 at 9-11. The ALJ must ordinarily give great weight to a VA determination of disability "because of the marked similarities between" the VA and SSA as "federal disability programs." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).[2] However, "[b]ecause the VA and SSA criteria for determining

---

[2] For claims filed on or after March 27, 2017, decisions made by other governmental agencies are "neither inherently valuable or persuasive," and ALJs "will not provide any analysis about how we considered such evidence." 20 C.F.R. § 404.1520b(c) (2017). "This amended regulation will overrule *McCartey*'s requirement that 'an ALJ must ordinarily give great weight to a VA determination of disability' or provide 'persuasive, specific, valid reasons for [giving less weight] that are supported by the record." *Underhill v. Berryhill*, 685 F. App'x 522, 524

disability are not identical, [] the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.*

First, the ALJ found that the VA rating was not explained. Tr. 27. A lack of explanation for the disability rating can be a persuasive, specific, valid reason to discredit the disability rating. *See Carinio v. Berryhill*, 736 F. App'x 670, 674 (9th Cir. 2018). Here, Plaintiff's disability rating is documented throughout his VA treatment notes. *See, e.g.,* Tr. 482, 529, 875. Although the record contains over 450 pages of VA evidence, no VA record explains how Plaintiff's disability rating was determined.[3] Tr. 429-33, 481-91, 499-783, 796-874, 875-910, 973-1009, 1018-53. The lack of explanation for the disability rating in the record constitutes

_____

n.1 (9th Cir. 2017) (J. Ikuta, dissenting) (internal citations omitted). Because this case was filed before March 27, 2017, the Court applies *McCartey* to the ALJ's analysis.

[3] The Court notes that because Plaintiff was represented by counsel throughout the administrative proceedings, Tr. 122, and because Plaintiff's VA disability rating was contained in the record, Tr. 482, the ALJ did not have a duty to obtain the actual disability determination from the VA. *Chaudhry v. Astrue*, 688 F.3d 661, 669-70 (9th Cir. 2012).

a persuasive, specific, valid reason for the ALJ to give less weight to the VA rating.

Second, the ALJ found that the VA rating was inconsistent with the medical evidence. Tr. 27. Inconsistency with the medical evidence provides "persuasive, specific, valid reason[]" for rejecting a VA disability rating. *Berry v. Astrue*, 622 F.3d 1228, 1236 (9th Cir. 2010); *see also Phillips v. Berryhill*, No. 3:16-cv-00226-LRH-WGC, 2017 WL 3130418, at *10 (D. Nev. July 24, 2017) (ALJ properly rejected VA's mental impairment 70% disability rating where claimant's longitudinal record showed normal mental status examinations). The ALJ observed, as an example, that the VA rated Plaintiff 70% disabled based on traumatic brain injury (TBI), yet the record did not document objective findings of TBI. Tr. 27; *see* Tr. 427-28 (December 14, 2013: unremarkable brain MRI); Tr. 448-49 (January 13, 2016: head CT showed no acute intracranial pathology); Tr. 458 (January 18, 2016: normal brain MRI); Tr. 970-71 (normal EEG). Plaintiff challenges the ALJ's finding by purporting to identify evidence of TBI complications. ECF No. 13 at 10; *see* Tr. 482 (70% disability rating for TBI); Tr. 484 (Plaintiff "did suffer a TBI and has a [seizure] disorder as a result of that TBI"); Tr. 486 (Assessment: "TBI with cognitive impairment provisional[.] [Patient] returns for [follow up] and appears clinically improved and clinically stable"); Tr. 488 (Plaintiff denied ever having neurocognitive evaluation for TBI);

Tr. 533 (Plaintiff reported worsening headache symptoms resulting in three emergency room visits in two weeks); Tr. 613 (spinal tap revealed fluid building up back of Plaintiff's head); Tr. 644 (differential diagnoses of PTSD, major depressive disorder, cognitive disorder due to TBI, and/or alcohol dependence in full sustained remission).[4]  Although Plaintiff identifies evidence that references Plaintiff's reports of a prior TBI, the ALJ reasonably determined that the record was devoid of objective evidence of the TBI to support a 70% disability rating based on TBI.  Tr. 27.  Furthermore, the ALJ's finding was not limited to the lack of objective evidence of TBI.  Rather, the ALJ found there was no "apparent basis in the record to support the degree of disability outlined in the VA rating decision."  Tr. 27.  This is consistent with the ALJ's discussion of the evidence throughout the record, noting normal mental status examinations, a lack of objective documentation of seizures, and a lack of objective findings to support back pain allegations, discussed *supra*.  The lack of supporting medical evidence provides persuasive, specific, valid reason for the ALJ to give less weight to the VA rating.

_____

[4] Plaintiff also identifies Dr. Smiley's testimony that it's "actually unusual to find something abnormal on their CT or MRIs" to explain the lack of objective evidence of TBI in the record.  ECF No. 13 at 10; *see* Tr. 43.  However, Dr. Smiley's statement was about headaches, not TBI.  Tr. 43.

ORDER - 29

Third, the ALJ found the VA rating was inconsistent with Plaintiff's activities.  Tr. 27.  An ALJ may consider a claimant's activities as evidence inconsistent with a VA disability rating.  *See Connors v. Berryhill*, No. 6:15-cv-2365-SI, 2017 WL 2930584, at *5 (D. Or. July 5, 2017) (claimant's work history provided persuasive, specific, valid reason to reject VA disability rating).  Here, the ALJ found the VA's 100% disability rating was inconsistent with Plaintiff's robust daily activities, including substantial involvement in coaching youth football.  Tr. 27; *see* Tr. 485 (October 7, 2015: Plaintiff reported enjoying coaching youth football); Tr. 495 (March 8, 2016: Plaintiff reported spending "considerable time" attending kids' football games, reported he was the head coach of a youth football team, and described his nonprofit work as involving attending board meetings, talking to businesses and high schools, and handling complaints); Tr. 844 (March 14, 2016: Plaintiff reported enjoying coaching eight different youth football teams, hosting kids at his home for games, and being invited to coach at camps in Denver and Seattle); Tr. 999 (October 18, 2016: Plaintiff reported being invited to coach at other youth football camps and declining because of travel expenses, reported staying busy on a daily basis with coaching and nonprofit work, and reported receiving awards for his coaching).  Plaintiff's activities provide persuasive, specific, valid reason for the ALJ to give less weight to the VA rating.

Finally, the ALJ found that the VA rating criteria was inconsistent with Social Security Administration policy.  Tr. 27.  Specifically, the ALJ found the VA's disability rating for non-severe impairments like scars and tinnitus indicated that the VA's disability rating criteria was inconsistent with SSA policy.  *Id.*  Differences between VA and SSA governing rules do not provide persuasive, specific, valid reason for rejecting a VA disability rating.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 695 (9th Cir. 2009) ("Insofar as the ALJ distinguished the VA's disability rating on the general ground that the VA and SSA disability inquiries are different, her analysis fell afoul of *McCartey.*").  Therefore, this was not a persuasive, specific, valid reason for the ALJ to give less weight to the VA rating.  However, the ALJ's error was harmless because the ALJ provided several other persuasive, specific, valid reasons to give less weight to the VA rating.  *Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").  Plaintiff is not entitled to remand on these grounds.

**D. Step Two**

Plaintiff challenges the ALJ's failure to identify certain impairments as severe impairments at step two of the sequential evaluation.  ECF No. 13 at 14-15.

At step two of the sequential process, the ALJ must determine whether claimant suffers from a "severe" impairment, i.e., one that significantly limits her

physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).  To

show a severe impairment, the claimant must first prove the existence of a physical

or mental impairment by providing medical evidence consisting of signs,

symptoms, and laboratory findings; the claimant's own statement of symptoms

alone will not suffice.  20 C.F.R. § 404.1521 (1985).

An impairment may be found to be not severe when "medical evidence

establishes only a slight abnormality or a combination of slight abnormalities

which would have no more than a minimal effect on an individual's ability to

work…."  Social Security Ruling (SSR) 85-28 at *3.  Similarly, an impairment is

not severe if it does not significantly limit a claimant's physical or mental ability to

do basic work activities; which include walking, standing, sitting, lifting, pushing,

pulling, reaching, carrying, or handling; seeing, hearing, and speaking;

understanding, carrying out and remembering simple instructions; responding

appropriately to supervision, coworkers and usual work situations; and dealing

with changes in a routine work setting.  20 C.F.R. § 404.1521 (1985); SSR 85-28.[5]

_____

[5] The Supreme Court upheld the validity of the Commissioner's severity
regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54
(1987).

ORDER - 32

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Plaintiff asserts the ALJ erred by failing to find the following diagnoses as severe impairments: TBI, mild arthritis of the lumbar spine, bulging disc, sciatica, hypertension, insomnia, and hyperlipidemia. ECF No. 13 at 14-15. Plaintiff cites treatment notes where these conditions were diagnosed, observed, or reported. *Id.* However, the "mere diagnosis of an impairment … is not sufficient to sustain a finding of disability." *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). Plaintiff identifies no evidence in the record that mild arthritis of the lumbar spine, bulging disc, sciatica, hypertension, insomnia, or hyperlipidemia have any impact on his basic work abilities. ECF No. 13 at 14-15. Therefore, Plaintiff does not establish these diagnoses are severe impairments.

Plaintiff alleges his TBI causes cognitive disorder and headaches, resulting in alleged impairments in memory, focus, concentration, and persistence. ECF No. 13 at 14-15. The record documents Plaintiff reported suffering a TBI during his military service in 2008. Tr. 577-78. However, the ALJ found no objective

evidence in the record to support the presence of TBI.  Tr. 21; *see* Tr. 427-28

(December 14, 2013: unremarkable brain MRI); Tr. 448-49 (January 13, 2016:

head CT showed no acute intracranial pathology); Tr. 458 (January 18, 2016:

normal brain MRI); Tr. 970-71 (normal EEG).  Additionally, no medical source

opined functional limitations as a result of TBI.  Furthermore, the record indicates

Plaintiff's past TBI may be associated with other impairments that the ALJ did find

were severe impairments.  Tr. 17; *see* Tr. 484 (Plaintiff "did suffer a TBI and has a

[seizure] disorder as a result of that TBI"); Tr. 644 (differential diagnoses of

PTSD, major depressive disorder, cognitive disorder due to TBI, and/or alcohol

dependence in full sustained remission); Tr. 757 (Plaintiff's reported cognitive

difficulties "are likely due to a combination of TBI and PTSD").  Even if the ALJ

should have identified TBI as a severe impairment at step two, such error is

harmless because step two was resolved in Plaintiff's favor.  *See Stout v. Comm'r*

*of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch*, 400 F.3d at 682.

Plaintiff is not entitled to remand on these grounds.

**E. Step Three**

Plaintiff challenges the ALJ's failure to find Plaintiff's impairments met or

medically equaled the severity of a listed impairment at step three of the sequential

evaluation.  ECF No. 13 at 15-16.

ORDER - 34

At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). The Listing of Impairments "describes for each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. § 404.1525 (2011). To meet a listed impairment, a claimant must establish that he meets each characteristic of a listed impairment relevant to his claim. 20 C.F.R. § 404.1525(d) (2011). If a claimant meets the listed criteria for disability, he will be found to be disabled. 20 C.F.R. § 404.1520(a)(4)(iii). The claimant bears the burden of establishing he meets a listing. *Burch*, 400 F.3d at 683.

Plaintiff asserts the ALJ should have found Plaintiff's impairments met or medically equaled Listings 12.02 (neurocognitive disorder), 12.04 (depressive disorder), and 12.15 (trauma- and stressor-related disorder). ECF No. 13 at 15-16. The Paragraph B criteria associated with these three listings are met if the impairment results in extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; adapt or manage oneself. 20 C.F.R. § 404, Subpart P, Appendix I. Plaintiff asserts Dr. Orr's memory scores and Dr. Veraldi's testimony should have compelled the ALJ to find Plaintiff met Listings 12.02, 12.04, or 12.15 singly or in combination. ECF

No. 13 at 15-16.  In response to the ALJ's question about the Paragraph B criteria,

Dr. Veraldi testified that Dr. Orr's memory scores would compel "concurrence" on

the "understand, remember, or apply information" prong, but that Dr. Orr's

memory scores "make no sense to me.  I just note them."  Tr. 45.  Dr. Veraldi

testified that she rated Plaintiff's impairment in understanding, remembering, or

applying new information as mild.  *Id.*

Plaintiff's argument rests on the assumption that the ALJ erred in

discrediting Dr. Orr's opinion.  ECF No. 13 at 15.  However, as discussed *supra*,

the ALJ did not err in discrediting Dr. Orr's opinion.  Additionally, Dr. Veraldi

testified at the hearing, was available for cross examination, and the ALJ found

substantial evidence in the record supported her opinion and assigned her opinion

great weight.  Tr. 26.  The ALJ reasonably relied on Dr. Veraldi's testimony to

discredit Dr. Orr's memory scores and on Dr. Veraldi's opinion that Plaintiff's

impairment in understanding, remembering, or applying new information was

mild.  Plaintiff does not establish that his impairments met or medically equaled

the severity of a listed impairment.

**F.  Step Five**

Plaintiff challenges the ALJ's step five analysis for being based on an RFC

Plaintiff contends fails to incorporate all of Plaintiff's limitations.  ECF No. 13 at

19-20.

At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that 1) the claimant can perform other work, and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c); *Beltran*, 700 F.3d at 389. In assessing whether there is work available, the ALJ must rely on complete hypotheticals posed to a vocational expert. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations. *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101.

Plaintiff's argument is based entirely on the assumption that the ALJ erred in considering the medical opinion evidence and Plaintiff's symptom claims. ECF No. 13 at 19-20. For reasons discussed throughout this decision, the ALJ's evaluation of Plaintiff's symptom complaints and the medical evidence is legally sufficient and supported by substantial evidence. Thus, the ALJ did not err in assessing the RFC or finding Plaintiff capable of performing other work in the national economy.

# CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 13, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 14, is **GRANTED**.

3. The Court enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED March 18, 2019.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 38